## A97A1343. TUCKER v. THE STATE.
(491 SE2d 420)

BLACKBURN, Judge.

David Martin Tucker appeals his convictions of burglary, aggravated sodomy, aggravated assault, false imprisonment, sexual battery, and simple battery. He contends that the trial court improperly admitted his custodial statement into evidence and that the court erred in admitting certain other evidence. For the reasons set forth below, we affirm the convictions.

1. Tucker contends that because he had invoked his constitutional right to counsel at the time he made his custodial statement, the trial court erred by admitting the statement into evidence. He also claims that the trial court erred in admitting the statement because its contents improperly informed the jury that he had invoked his constitutional rights to counsel and silence.

The facts show that the charges which resulted in Tucker's conviction grew out of his assaults upon two women at different times. At trial, Tucker admitted the charges with respect to the first woman, but denied committing any offense against the second woman. The evidence showed that Tucker entered the second woman's apartment late at night, held her against her will throughout the night, performed sexual acts upon her without her consent, and then fled the next morning. Police apprehended Tucker several days later in his attic.

Following his arrest, the police attempted to interview Tucker to obtain his statement. Officer Mitch Williams testified that he read

Tucker his *Miranda* rights and informed Tucker what he was charged with in regard to the second woman. He then asked Tucker if he wanted to talk to the officers present regarding the charges. Tucker responded, "I don't know what to do. I guess I need a lawyer because I wasn't even there when that happened. I was tied up in the attic with ropes." After a brief exchange with Officer Williams, the interview ended shortly thereafter.

(a) Tucker contends that his statement, "I guess I need a lawyer because I wasn't even there when that happened" was an unambiguous invocation of his right to counsel, and pursuant to *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), all interrogation should have stopped immediately following this request. Alternatively, he cites *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985), and claims that once he made this reference to counsel, the police should have limited their inquiry to the question of whether he wanted counsel. Because the police eventually determined that he did want counsel, Tucker argues that his entire statement should have been inadmissible.

Our Supreme Court recently addressed this issue in *Jordan v. State*, 267 Ga. 442 (480 SE2d 18) (1997). In *Jordan*, the defendant told police that he " 'thought he might need a lawyer.' " Id. at 443. Relying upon *Davis v. United States*, 512 U. S. 452 (114 SC 2350, 129 LE2d 362) (1994), the Supreme Court of Georgia held that the defendant's statement that he "thought he might" need an attorney was not "a clear invocation of his right to counsel as would require the cessation of questioning under *Edwards v. Arizona*." *Jordan*, supra at 444. *Jordan* further noted that *Edwards* requires questioning to cease only when a suspect "has *clearly* asserted a right to have counsel present during custodial interrogation." (Emphasis in original.) *Jordan*, supra at 444.

In this case, Tucker's statements that he "guessed" he needed a lawyer and that he "didn't know what to do" are substantially similar to the *Jordan* defendant's statement that he "thought he might" need a lawyer. See also *Davis*, supra, 129 LE2d at 373 (defendant's statement " 'Maybe I should talk to a lawyer' " was not an unambiguous request for counsel). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." (Punctuation omitted; emphasis in original.) *Jordan* at 444, quoting *Davis*, supra. Therefore, as Tucker's statement was not a clear invocation of his right to counsel, the officers had no obligation to cease questioning him immediately.

Alternatively, Tucker relies upon *Hall v. State*, supra, to establish the inadmissibility of his statement. In *Hall*, our Supreme Court

held that "after an ambiguous request for counsel, the scope of any further interrogation should be narrowed to an attempt to clarify the nature of the request." *Jordan*, supra at 445-446 (1). However, *Hall* was effectively overruled by *Jordan*, which noted that *Hall* had been decided before the United States Supreme Court's decision in *Davis*. *Jordan*, supra at 445. In *Davis*, the Supreme Court held that, "we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis*, supra, 129 LE2d at 373. Accordingly, the officers were not obligated to ask Tucker clarifying questions when he made his ambiguous request for counsel, and all the statements he made up until he clearly invoked his right to counsel were properly admitted by the trial court.

Although *Jordan* leaves open the possibility that the Georgia Constitution might afford citizens more rights in this area than does the federal constitution as interpreted in *Davis*, it is clear that Tucker's claim cannot prevail on any constitutional ground. See *Jordan*, supra at 446, n. 4. "In this case, [Tucker's] testimony at trial was substantially the same as the statement which he made to police following his arrest. . . . Under the circumstances, the admission of the statement, even if error, would be harmless error." (Punctuation omitted.) *Creson v. State*, 218 Ga. App. 184, 185 (1) (460 SE2d 83) (1995). Such alleged error was further rendered harmless by the testimony of the arresting officer who, without objection, testified that Tucker had told him upon arrest that he had not committed the crimes because he had been bound and gagged in his attic. "Even erroneous admission of evidence will not be grounds for reversal if the same evidence was admitted elsewhere without objection." (Punctuation omitted.) *Burton v. State*, 191 Ga. App. 822, 825 (7) (383 SE2d 187) (1989). Accordingly, the trial court did not err in denying Tucker's motion for mistrial on any of the grounds stated above.

(b) Tucker also contends that the trial court erroneously admitted his custodial statement because its contents improperly informed the jury that he had eventually invoked his constitutional rights to counsel and silence. He relies upon *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991) for this proposition, wherein it was held that "in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. Accordingly, . . . such a comment will not be allowed." Id. at 630 (5). In *Ford v. State*, 219 Ga. App. 562 (466 SE2d 11) (1995), this Court applied such rule to a situation where a law enforcement officer testified at trial that a defendant refused to give a statement upon arrest after having been read *Miranda* warnings. Id. at 563 (2).

After Tucker stated that he had been tied up in his attic with

ropes, he invoked his rights to counsel and silence. Accordingly, while his statement regarding the ropes was not inadmissible for any of the reasons stated in the prior division, the fact that he eventually invoked his rights to counsel and silence should not have been admissible. In the process of relating Tucker's ropes statement to the jury, however, Officer Williams testified that after making such statement, Tucker invoked his rights to counsel and silence. This testimony therefore violated the rules of *Mallory* and *Ford*, and was improperly admitted over Tucker's objection. This is so aside from those issues of admissibility discussed in the prior division.

However, "[i]mproper reference to a defendant's silence . . . does not automatically require reversal." (Punctuation omitted.) *Ford*, supra at 564 (2). In this case, the evidence of Tucker's guilt was overwhelming. He admitted at trial all of the charges related to the first woman, and there was abundant direct evidence presented regarding his commission of the specified offenses against the second woman. Accordingly, any such error was harmless beyond a reasonable doubt. See *Chapman v. State*, 263 Ga. 393, 394 (1) (435 SE2d 202) (1993). Reversal on this ground is therefore not warranted.

2. Tucker contends the trial court erred when it overruled his objection to one of the prosecutor's questions. While cross-examining Tucker, who maintained that he had been bound and gagged in the attic at the pertinent times, the prosecutor asked Tucker if one of the police officers, whose story was different from Tucker's, was "coming to court and telling a lie." Tucker contends that pursuant to *Cargill v. State*, 255 Ga. 616, 631 (17) (a) (340 SE2d 891) (1986), "it is improper for counsel to ask a witness whether another witness is lying." *Cargill* also states that where, as here, an objection is made to such a question, such objection should be sustained. Id.

*Cargill*, however, does not demand reversal in this case. "Although, as pointed out by [Tucker], the truthfulness or veracity of a witness is solely within the province of the jury, and we have held that '(i)n no circumstances may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth,' we fail to see how the prosecutor's question violated these principles. [Tucker's] response to the question in no way 'bolstered the veracity' of any witness, but merely emphasized the conflict in the evidence, which it was the jury's duty to resolve, and the trial court properly charged the jurors [regarding the determination of witness credibility]. We find no error here." (Citations omitted.) *Little v. State*, 194 Ga. App. 361, 362 (2) (390 SE2d 445) (1990); cf. *Dorsey v. State*, 259 Ga. 809 (3) (387 SE2d 889) (1990) (prosecutor's question to defendant that " 'everybody's lying about this whole thing but you, is that right?' " while argumentative, does not call for defendant to make credibility determinations about testimony of

other witnesses).

Presuming the trial court erroneously allowed the question, Tucker has not shown how either the question or his response to it harmed him. Inasmuch as harm as well as error must be shown to warrant a reversal, Tucker is not entitled to reversal on this ground, and his argument is accordingly without merit. See *Fields v. State*, 223 Ga. App. 569, 572 (3) (479 SE2d 393) (1996).

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED AUGUST 13, 1997 —
RECONSIDERATION DENIED SEPTEMBER 2, 1997 —

*L. Clark Landrum*, for appellant.
*C. Paul Bowden, District Attorney*, for appellee.